

March 31, 2021
Volume XI, Number 90

Login

# THE
# NATIONAL LAW REVIEW

57 NEW ARTICLES

Advertisement

# Ticketmaster, Live Nation Get Booed: Concert-Goers File Class Action for "Unchecked" Abuse of Market Power

Jennifer M. Oliver

*MoginRubin*

Like 72

Tweet

Advertisement

infolinks

Tuesday, May 5, 2020

By using the website, you agree to our use of cookies to analyze
website traffic and improve your experience on our website.
Learn more.

X

Concert-goers tired of paying "supracompetitive fees" on ticket purchases from Ticketmaster LLC filed a class action against the company and its parent, promoter Live Nation Entertainment, Inc., in U.S. District Court for the Central District of California on April 28 for abusing its more than 70% share of the primary ticketing market (i.e. where tickets are initially sold) for major concerts. The merged companies are also aggressively deploying anticompetitive tactics in pursuit of the lucrative "secondary ticketing" market where tickets are re-sold, typically at higher prices.

Ticketmaster achieved its dominant position through a "web of long-term exclusive dealing agreements" and other anticompetitive activity, the plaintiffs maintain. The companies merged in 2010, putting the ticketing giant together with the nation's "most dominant concert promoter." Live Nation controls 60% of the promotion business for major concerts. AEG Live is a distant number two, with 20% market share. Now, the plaintiffs say, Live Nation uses Ticketmaster as a loss leader to bludgeon its competitors and strong-arm venues (*Iderstine v. Live Nation Entertainment, Inc. and Ticketmaster LLC*, No. 1:20-CV-03888-PA-GJS, C.D. Calif., Western Div.).

"Subsidized by the supracompetitive profits Ticketmaster's business generates from its domination of primary ticketing services for major concert venues, Live Nation Entertainment is able to keep a stranglehold on concert promotion services – losing tens of millions of dollars annually – by paying its clients exorbitant amounts," the complaint reads. Live Nation "regularly threatens" concert venues with eliminating them from big-act tours if they use a Tickemaster competitor for ticketing services.

Live Nation has apparently become such an emboldened market bully that its CEO, Michael Rapino, openly boasted last year that if a venue doesn't use Ticketmaster it will suffer economically because "we don't hold the revenue." This stiff-arm anticompetitive style hasn't been lost on the Department of Justice Antitrust Division or anyone who's paying attention in the industry. It's become the norm. The DOJ said U.S. venues have come to accept that if they don't use Tickmaster they will lose big-star performers and significant revenue. "Given the paramount importance of live event revenues to a venue's bottom line, this is a loss most venues can ill-afford," the DOJ observed.

We recently wrote in our post — *DOJ: Event Powerhouse Live Nation Punished Concert Venues for Using Competing Ticketers Despite Bar* – of the government's charge that Live Nation has been violating the DOJ-ordered ban on anticompetitive behavior for years. Now, Live Nation is operating under what the DOJ calls "the most significant enforcement action" of an existing antitrust consent decree in its history, one intended, at least, to secure stricter and longer lasting conditions designed to rein in the event conglomerate's anticompetitive behavior. The DOJ action began more than a decade ago after the company acquired Ticketmaster. A 2010 final judgment permitted the merger but prohibited the company from retaliating against concert venues for using competing ticket companies, threatening concert venues, or taking other actions against concert venues for 10 years (*United States v. Ticketmaster Entertainment, Inc., et al.*, Case No. 1:10-cv-00139-RMC [July 30, 2010]).

These are highly profitable companies. Live Nation's 2018 revenues were $10.8 billion. Ticketmaster, a wholly-owned subsidiary following their merger in 2010, made $1.5 billion in 2018.

Despite the 2010 judgment, the DOJ announced earlier this year that Live Nation had been repeatedly violating it for years. The government hopes the modified and extended judgment clarifies for Live Nation what conduct is out of bounds and gives consumers and venues the relief the DOJ wanted in the first place.

Historically, structural remedies (such as divestitures) have been preferable to behavioral remedies (like consent decrees) in addressing antitrust concerns over proposed mergers. As Live Nation and Tickmaster are demonstrating, behavioral remedies are too easily ignored or abused by post-merger behemoths. Too often the benefits of violation outweigh the punishment. Their behavior also highlights the anticompetitive effects that can result from large-scale vertical mergers, which have been rampant in recent years. Bundling, tying, and exclusive contracts are just a few of the competitive concerns that we see playing out here, not to mention a stagnation in the entry of new competitors in various complementary markets.

**Seeking relief under Sections 1 and 2 of the Sherman Act, Tickemaster and Live Nation, the *Iderstine*** `infolinks`

- Engage in anticompetitive exclusive dealing with concert venues;

By using the website, you agree to our use of cookies to analyze website traffic and improve your experience on our website. Learn more.

X

Ticketmaster, and not its competitor;

- Bar individuals from transferring tickets unless they use Ticketmaster to do so;

- Prevent secondary ticket service providers from being able to do business – and charge consumers lower fees – by forcing venues to use both their concert promotion and concert ticketing services. In other words, tying. Ticketmaster enjoys double-digit annual growth as a result of its "unchecked" anticompetitive conduct, the complaint says.

- Use "coercion of and threats against disloyal customers, ticket brokers, and others";

- Execute vertically arranged boycotts.

Ticketmaster has "clearly engaged in blatant, anti-consumer behavior for years," the plaintiffs say. In addition to its "behind-the-scenes efforts to feed ticket brokers huge amounts of supply if they sold on Ticketmaster's secondary platform," the plaintiffs cite the DOJ's extension of the 2010 consent decree. It's only recently come to the attention of ticket-buyers that Live Nation has been "shamelessly" violating the consent agreement for years. It also notes that the Federal Trade Commission ordered Ticketmaster to stop implying ticket prices were higher on its primary platform than its secondary re-sale platform, when the opposite is true.

**The complaint seeks certification of two subclasses:**

1. Primary Ticketing Services Consumer Class. "All end-user purchasers in the United States who purchased a primary ticket and paid associated fees for primary ticketing services for an event at a major concert venue in the United States from Ticketmaster or one of its affiliated entities owned, directly or indirectly, by Live Nation Entertainment, Inc. at any point since 2010."

2. Secondary Ticketing Services Consumer Class. "All end-user purchasers in the United States who purchased a secondary ticket and paid associated fees for secondary ticketing services for an event at a major concert venue in the United States from Ticketmaster or one of its affiliated entities owned, directly or indirectly, by Live Nation Entertainment, Inc. at any point since 2010."

*Advertisement*

© MoginRubin LLP

National Law Review, Volume X, Number 126

PRINTER-FRIENDLY EMAIL THIS ARTICLE DOWNLOAD PDF REPRINTS & PERMISSIONS

*Advertisement*

infolinks

By using the website, you agree to our use of cookies to analyze website traffic and improve your experience on our website. Learn more.

X

Advertisement

TRENDING LEGAL ANALYSIS

**DC Strengthens Worker Protections with Ban on Non-Compete Agreements**
*By Katz, Marshall & Banks, LLP*

**Health Care Enforcement Update: Covid-19 Fraud Cases Brought By DOJ And Private Plaintiffs**
*By Mintz*

**Employers – 100% COBRA (or State Continuation) Premium Payment Required as of April 1, 2021**
*By Davis|Kuelthau, s.c.*

**The CPSC Digs In on Artificial Intelligence**
*By Foley & Lardner LLP*

**Challenging the Transfer of Non-Probate Assets**
*By Stark & Stark*

**COVID-19: US State Policy Report – March 27-30, 2021**
*By Squire Patton Boggs (US) LLP*

Advertisement

infolinks

By using the website, you agree to our use of cookies to analyze website traffic and improve your experience on our website. Learn more.

x

*Advertisement*



By using the website, you agree to our use of cookies to analyze website traffic and improve your experience on our website. Learn more.

X

# THE
# NATIONAL LAW REVIEW

| | |
|---|---|
| ANTITRUST LAW | HEALTH CARE LAW |
| BANKRUPTCY & RESTRUCTURING | IMMIGRATION |
| BIOTECH, FOOD, & DRUG | INTELLECTUAL PROPERTY LAW |
| BUSINESS OF LAW | INSURANCE |
| ELECTION & LEGISLATIVE | LABOR & EMPLOYMENT |
| CONSTRUCTION & REAL ESTATE | LITIGATION |
| ENVIRONMENTAL & ENERGY | CYBERSECURITY MEDIA & FCC |
| FAMILY, ESTATES & TRUSTS | PUBLIC SERVICES, INFRASTRUCTURE, TRANSPORTATION |
| FINANCIAL, SECURITIES & BANKING | TAX |
| GLOBAL | WHITE COLLAR CRIME & CONSUMER RIGHTS |

LAW STUDENT WRITING COMPETITION   SIGN UP FOR NLR BULLETINS   TERMS OF USE   PRIVACY POLICY   FAQS



**Legal Disclaimer**

You are responsible for reading, understanding and agreeing to the National Law Review's (NLR's) and the National Law Forum LLC's Terms of Use and Privacy Policy before using the National Law Review website. The National Law Review is a free to use, no-log in database of legal and business articles. The content and links on www.NatLawReview.com are intended for general information purposes only. Any legal analysis, legislative updates or other content and links should not be construed as legal or professional advice or a substitute for such advice. No attorney-client or confidential relationship is formed by the transmission of information between you and the National Law Review website or any of the law firms, attorneys or other professionals or organizations who include content on the National Law Review website. If you require legal or professional advice, kindly contact an attorney or other suitable professional advisor.

Some states have laws and ethical rules regarding solicitation and advertisement practices by attorneys and/or other professionals. The National Law Review is not a law firm nor is www.NatLawReview.com intended to be a referral service for attorneys and/or other professionals. The NLR does not wish, nor does it intend, to solicit the business of anyone or to refer anyone to an attorney or other professional. NLR does not answer legal questions nor will we refer you to an attorney or other professional if you request such information from us.

Under certain state laws the following statements may be required on this website and we have included them in order to be in full compliance with these rules. The choice of a lawyer or other professional is an important decision and should not be based solely upon advertisements. Attorney Advertising Notice: Prior results do not guarantee a similar outcome. Statement in compliance with Texas Rules of Professional Conduct. Unless otherwise noted, attorneys are not certified by the Texas Board of Legal Specialization, nor can NLR attest to the accuracy of any notation of Legal Specialization or other Professional Credentials.

The National Law Review - National Law Forum LLC 4700 Gilbert Ave. Suite 47 #230 Western Springs, IL 60558 Telephone (708) 357-3317 or toll free (877) 357-3317. If you would like to contact us via email please click here.

Copyright ©2021 National Law Forum, LLC



By using the website, you agree to our use of cookies to analyze website traffic and improve your experience on our website. Learn more.

 X